UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case No. 17-80489-CIV-BLOOM/HOPKINS
Criminal Case No. 12-80109-CR-HURLEY

MICHAEL JAMES MELILLO,

           Petitioner,

v.

UNITED STATES OF AMERICA,

           Respondent.

_____/

FILED BY ___ TM ___
Deputy Clerk

Mar 12, 2018

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. West Palm Beach

## REPORT AND RECOMMENDATION ON PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (DE 1)

**THIS CAUSE** has come before this Court upon an order referring the instant Petition to the undersigned United States Magistrate Judge for a Report and Recommendation (DE 2). On April 18, 2017, Michael James Melillo ("Petitioner") filed a Motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (DE 1). The Government filed a Response on July 13, 2017 (DE 8) and Petitioner filed a Reply on August 14, 2017. The matter is now ripe for review. For the reasons explained below, this Court **RECOMMENDS** that the Motion (DE 1) be **DENIED**.

### FACTUAL BACKGROUND

The facts of case, as confirmed by the Petitioner in his guilty plea, are laid out in pages 4 through 9 of the Eleventh Circuit's opinion dealing with Petitioner's appeal (CV DE 8-1). This Court only roughly summarizes the facts of the case as follows:

Petitioner and Pavlos Kaimaclitois planned to carry out a kidnapping. He mentioned his difficulty to recruit someone who was willing to assist them to his girlfriend Anna. Anna referred

1

Petitioner to a friend, Mario, who offered to help. Mario arranged for Petitioner to meet "David", who was actually an undercover FBI agent sent by the FBI after Mario and Anna had informed them of the Petitioner's plans. Petitioner explained to David that he and Kaimacliotis had been planning the kidnapping for a year and a half. He wanted to ask for $ 15 million ransom and cut off victim's fingers if his family refused to pay. Petitioner also stated he had done research on the kidnapping on his iPad which he intended to throw in the ocean to avoid detection. Petitioner gave the undercover agent $ 5,000 to obtain more information about the victim and get started on the plan. During a second meeting, Petitioner said he had purchased two untraceable cell phones to use during the ransom negotiations. A week later the undercover agent informed Petitioner of the successful kidnapping and Petitioner placed several calls to a woman whom he believed to be the victim's wife (actually another FBI agent) to demand a $ 20 million ransom. During the arranged ransom drop, Petitioner was arrested.

## BACKGROUND

On January 22, 2013, Petitioner entered into a plea agreement with the Government whereby he pled guilty to Count 1 of the indictment in case number 12-80109-CR-HURLEY (CR DE 79), which charged the Petitioner with conspiracy to commit kidnapping in violation of Title 18, Unites States Code, Section 1201(c).

Petitioner was initially represented by privately retained counsel, Mr. Antony J. Iacullo from New Jersey. At the change of plea hearing on January 22, 2013, the District Court engaged in a lengthy colloquy with the Petitioner to ensure that his plea was knowing and voluntary. *See* Transcript of Change of Plea Proceedings (CV DE 8-6 at pages 5-36). Specifically, Petitioner confirmed that prior to deciding to plead guilty he had reviewed the charges in detail with his counsel and had discussed the evidence the Government would have to bring at a trial (CV DE 8-

2

6 at page 5, 6). When asked whether he was "satisfied with the advice and with the services that Mr. Iacullo has provided", Petitioner answered in the affirmative (CV DE 8-6 at page 7). The District Court then inquired about the Petitioner's legal background and the Petitioner explained that he had practiced law in New Jersey as a certified civil trial lawyer until 2000. When he moved to Florida he did not join the Florida bar but worked as a law clerk in Boca before starting a business. (CV DE 8-6 at page 8 to 10).

Thereafter, the District Court went through each of the rights Petitioner would be waiving with his plea to make sure Petitioner fully understood the consequences of his waiver (CV DE 8-6 at page 12-17). The District Court examined the elements of the crime the Petitioner plead guilty to (CV DE 8-6 at page 19) and explained in particular the requirement of interstate nexus and how the use of the internet may fulfill such requirement (CV DE 8-6 at page 21, 22). The Government incorrectly stated in the colloquy that an overt act was not required for the offense charged, however, the District Court chose to assume that an overt act is necessary (which is actually the case) and explained this specific requirement to the Petitioner (CV DE 8-6 at page 23-24).

Before Petitioner entered his guilty plea, the District Court asked Petitioner again if he was pleading guilty because he really intentionally and knowingly joined a conspiracy to kidnap and either he or his co-conspirator took an overt act to achieve the goal of the conspiracy and Petitioner answered in the affirmative (CV DE 8-6 at page 35).

The District Court found that Petitioner was fully competent and capable of entering an informed plea, and that his plea was knowing and voluntary (DE 8-6 at page 50).

The Presentencing Investigation Report ("PSR") set out a base offense level of 32 and applied the following enhancements: (i) six-level enhancement for ransom demand, (ii) two-level

enhancement for role as organizer, leader, manager or supervisor of the criminal scheme, (iii) recommended three-level reduction for acceptance of responsibility. This resulted in a total offense level of 37 with a criminal history category of I, yielding an advisory Guidelines range from 210 to 262 months imprisonment.

Petitioner's counsel wrote a letter to the probation officer on March 1, 2013, objecting to both enhancements. Petitioner's second, appointed Counsel later filed this letter with the District Court (CR DE 97).

On the date set for sentencing, April 11, 2013, the Court permitted Petitioner's counsel's motion to withdraw after discussing in detail the rift between Petitioner and his counsel (CV DE 8-7 starting at page 5). Counsel stated that Petitioner was requesting him to raise objections that he thought would negatively impact the Petitioner, in particular his acceptance of responsibility points (CV DE 8-7 at page 11). The District Court pointed out to the Petitioner that testimony from the witnesses Petitioner wished to call would corroborate and strengthen the government's position (DE 8-6 at page 63) but upon Petitioner's request, the District Court granted the motion to withdraw (CV DE 8-6 at page 64).

The District Court appointed Ms. Randee Golder as Petitioner's new counsel. After reviewing the evidence, meeting and conferring on the phone with the Petitioner, Ms. Golder filed a motion to withdraw as counsel (CR DE 100). The District Court conducted a hearing on May 21, 2013 (CV DE 8-8). The District Court discussed in depth the reasons for the motion to withdraw (mainly disagreement with the Petitioner about the legal advice Ms. Golder was giving and resulting abusive conduct of the Petitioner, see CR DE 100 at ¶ 9, 10 ). Petitioner requested to proceed *pro se*, however, only if he was transferred to a jail with a law library (CV DE 8-8 at page 4). District Court informed Petitioner that it did not have any power over the location at

4

which he would be jailed and Petitioner decided not to proceed *pro se*, but motioned to appoint new counsel (CV DE 8-8 at page 11, 12). The District Court denied the motion to appoint new counsel and Petitioner again requested to proceed *pro se* rather than continue with Ms. Golder (DE 8-6 at page 25, 26, 32). The District Court conducted a *Faretta* hearing to ensure Petitioner was acting knowingly and willingly (CV DE 8-8 at pages 33 – 43). The District Court once more pointed out that Petitioner's actions could be interpreted as a failure to accept responsibility, depriving him of the reduction for acceptance of responsibility (CV DE 8-6 at page 40). The District Court stated that Petitioner may likely be detained in a facility without access to a law library (CV DE 8-6 at page 42), however, Petitioner insisted on representing himself (CV DE 8-6 at page 42, 43).

At the sentencing hearing Ms. Golder sat at the counsel table with the Petitioner as stand-by counsel (CV DE 8-9 at page 3). Petitioner objected to the six-level enhancement for ransom demand claiming he had been acting under duress and because he had believed that Mario had ties to the Mafia and had threatened him (CV DE 8-9 at page 121). However, Mario, when testifying, denied having threatened the defendant and the District Court overruled Petitioner's objection to the enhancement for ransom demand (CV DE 8-9 at page 145). The District Court similarly overruled Petitioner's objection to the leadership role and rejected Petitioner's argument that he was not the driving force behind the scheme (CV DE 8-10 at page 30). After hearing Petitioner's testimony, the District Court also found that the two-point reduction for acceptance of responsibility should not apply. The District Court stated that Petitioner had lied about the threats to himself and his family, about his role in the offense and had told a mistruth to reduce his liability for the crime (CV DE 8-10 at 93, 94). The District Court then sentenced Petitioner to 292 months imprisonment.

On November 4, 2013, Petitioner, represented by the Federal Public Defender office, filed an appeal. The appeal claimed that Petitioner was unconstitutionally stripped of his Sixth Amendment right because despite the conflict with his appointed counsel and request to appoint new counsel, the District Court forced him to either proceed with his appointed counsel or represent himself at sentencing (CV DE 8-2). The Eleventh Circuit ruled that the district court had not abused its discretion in refusing to appoint a different counsel to the Petitioner and that Petitioner had knowingly and voluntarily waived his right to counsel when he decided to proceed *pro se* (CV DE 8-1).

On April 18, 2017, Petitioner filed the instant Petition for habeas relief, wherein Petitioner claims that his sentence should be vacated, set aside or corrected or correct because of several due process violations (CV DE 1).

## DISCUSSION

### 1. Overview of Petitioner's claims

Petitioner essentially raises the following due process violations in the Motion to vacate, set aside or correct sentence:

- Defective indictment (Ground 1)

- Involuntary plea (Ground 2)

- Constitutionally ineffective retained and appointed counsel (Grounds 3 and 4)

- Lack of access to evidence and law library and involuntary pro se election (Ground 5)

- Constitutionally ineffective appellate counsel (Ground 6)

### 2. Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996, Congress established a mandatory, one-year period of limitation for section 2255 motions, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Jones v. United States*, 304 F.3d 1035, 1037-38 (11th Cir. 2002) (citing 28 U.S.C. § 2255(f)).

Under the instant facts, the Petition must be filed within one year of the date on which Petitioner's judgment of conviction became final. Petitioner's judgement became final on April 18, 2016, when the Supreme Court denied Petitioner's writ of certiorari. Petitioner filed the instant Petition on April 18, 2017, and it is timely.

### 3. Defective Indictment (Ground 1)

Petitioner claims that the indictment was defective for two reasons: (i) failure to charge an overt act and (ii) failure to invoke interstate commerce jurisdiction with regard to the planned kidnapping itself. Petitioner's claim with regard to the indictment must fail for several reasons:

#### a. Waiver of all non-jurisdictional defects

A guilty plea can only be challenged on collateral review in strictly limited circumstances. *Bousley v. U.S.*, 523 U.S. 614, 621 (1998). In particular, a guilty plea admits all

7

the elements of a formal criminal charge and therefore waives all non-jurisdictional defects in the proceedings against the defendant. *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014). "The failure of an indictment to allege a crime in violation of the laws of the United States is a jurisdictional defect. However, the omission of an element of the charged offense does not necessarily mean that an indictment has failed to allege a criminal offense against the laws of the United States and thus does not strip the district court of its jurisdiction over the case." *United States v. Palma*, 693 F. App'x 820, 822 (11th Cir. 2017) (citation omitted)

As "long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an offense against the laws of the United States and, thereby, invokes the district court's subject-matter jurisdiction. The omission of an element of that offense does not mean that the indictment fails to do so; it means only that the indictment is missing an allegation requisite to liability. This may allow the defendant to argue before a guilty plea that the indictment is insufficient and should be dismissed—but it does not deprive the district court of jurisdiction to act over the indictment or to accept a guilty plea." *Brown*, 752 F.3d at 1354 (11th Cir. 2014) (citations omitted)

With regard to the required interstate-commerce nexus the Eleventh Circuit has held that "we have noted, with regard to the federal statutes requiring an interstate-commerce nexus, that the failure to allege or prove an interstate-commerce element does not deprive the district court of jurisdiction. We stated that, while an effect on interstate commerce may be required for Congress to have authority to forbid certain conduct, that does not imply that a district court faced with an insufficient interstate-commerce nexus loses subject-matter jurisdiction of the case." *Palma,* 693 F. App'x at 823 (citations omitted)

8

Even if the indictment did not invoke a certain element of the crime (e.g. an overt act), this error is not a jurisdictional error as long as the indictment charges Petitioner with violating a valid federal statue (*Id.* at 1354). In this case, the indictment explicitly charges Petitioner with violating Title 18, United States Code, Section 1201(c).

The Petitioner's claims of lack of federal jurisdiction are equally barred: Similar to the overt act, the nexus to interstate commerce is an element of the crime (*United States v. Palma*, 693 F. App'x 820, 822–23 (11th Cir. 2017) and a failure to allege it is a non-jurisdictional error (*See Alikhani v. United States*, 200 F.3d 732, 735 (11th Cir. 2000), stating that a failure to allege or prove interstate-commerce element does not deprive the district court of its jurisdiction).

### b. Failure to raise in appeal

The Petitioner failed to raise the defects of the indictment at the district court level or in his appeal. Therefore, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains*." United States v. Frady*, 456 U.S. 152, 167–68, 102 S. Ct. 1584, 1594, 71 L. Ed. 2d 816 (1982)

*"Murray* teaches that a prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that 'some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule,' or that his attorney's performance failed to meet the *Strickland* standard for effective assistance of counsel." *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997).

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of

reasonableness." *Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 2055, 80 L. Ed. 2d 674 (1984). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* 689.

"The Supreme Court has held that *Strickland's* two-part test also applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill* held that to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. We have held that counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws

involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.'" *See Carter v. United States*, 288 F. App'x 648, 649 (11th Cir. 2008) (citing inter alia *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)) (citations omitted)

Petitioner claims that his counsel (both the retained counsel and the appointed counsel) were ineffective for failing to raise the alleged defects of the indictment. Applying the *Strickland* test as set out above and taking into consideration *Carter*, the Petitioner failed to show prejudice. The Petitioner alleges that because of the indictment defect and the fact that but for the government's involvement the only actual conspiracy he joined with Kaimacliotis was an extortion offense, the Petitioner would have proceeded to trial. The Petitioner invokes *Lee v. United States*, 137 S. Ct. 1958, 1965, 198 L. Ed. 2d 476 (2017). However, in *Lee* the defendant demonstrated a reasonable probability that he would have rejected the plea had he known that he faced mandatory deportation (presented proof that Lee asked his lawyer repeatedly about risk of deportation and confirmation by his lawyer that Lee would not have gone to trial had he known about the mandatory deportation). The Petitioner failed to allege any facts that convince the court that he would have proceeded to trial were it not for counsel's alleged constitutional error. Thus the Petitioner has failed to show the required prejudice under the *Strickland* test.

## 4. Involuntary Guilty Plea (Ground 2)

Petitioner alleges that his guilty plea was involuntary and induced by the ineffective assistance of Petitioner's counsel.

"A knowing and voluntary plea has three requirements: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant

11

must know and understand the consequences of his guilty plea." *United States v. Mosley,* 173 F.3d 1318, 1322 (11th Cir.1999).

"In order for a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available." See *LoConte v. Dugger*, 847 F.2d 745, 751 (11th Cir.), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

Counsel assisted defendant during the plea hearing, Petitioner acknowledged that he had discussed the case with his counsel, and Petitioner stated that he was satisfied with his representation. In addition, the District Court went through all elements of the offense with the Petitioner who used to practice as a civil trial lawyer, discussing in particular the overt act requirement and the interstate nexus. Petitioner specifically confirmed to the District Court that he or one of his co-conspirators had undertaken an overt act to achieve the goal of the conspiracy (CV DE 8-6 at 35).

Therefore, this Court holds that Petitioner's guilty plea was entered into knowingly and voluntarily.

## 5.  Ineffective Assistance of retained counsel and appointed counsel (Ground 3 and 4)

Petitioner claims both his privately retained and his court appointed counsel (together "Counsel") provided constitutionally ineffective counsel because:

> a) Counsel failed to alert Petitioner to available sentencing objections (reduction for inchoate conspiracy)

12

b) Counsel failed to provide adequate advice on law applicable to sentencing (issue of Petitioner's role)

c) Counsel failed to identify the elements of the offense and defects in the indictment

d) Counsel failed to properly advise Petitioner on the hopelessness of the duress defense

e) Counsel failed to offer adequate guidance on the meaning and value of the plea and likelihood that waving the right to appeal would create hardship after sentencing error

In determining if counsel has been unconstitutionally ineffective, courts are guided by the Supreme Court's decision in *Strickland*, 466 U.S. 668, as set out in Section 3.b. *supra*.

The standard to be used to determine whether counsel's performance was deficient is the objective standard of "reasonableness under the prevailing professional norms." *Id*. at 688. The *Strickland* Court held that courts should be highly deferential in their scrutiny of counsel's performance. *Id*. at 689 ("[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range or reasonable professional assistance"); see also *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (counsel's conduct is presumed reasonable).

Bearing the *Strickland* two-prong test in mind this Court addresses Counsel's alleged failures:

### a. Failure to address available sentencing objections (inchoate conspiracy)

Petitioner claims that his Counsel was ineffective for failing to seek a reduction in his offense level under U.S.S.G. § 2 X1.1 (inchoate conspiracy).

"Under the Guidelines, a defendant may receive a three-level reduction if he was convicted of attempt, rather than the substantive offense, unless (1) he or she "completed all the acts the defendant believed necessary for successful completion of the substantive offense," or (2) "the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." USSG § 2X1.1(b)(1)." *United States v. Aliaga,* 617 F. App'x 971, 975 (11th Cir. 2015)

Furthermore, the background section of § 2X1.1 explains that: "In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2)." U.S.S.G. § 2X1.1, comment. (background).

"The commentary to § 2X1.1 does not provide any insight into the application of this guideline, and the Commission gave no indication that an undercover agent should alter its application. Notably, in other instances where the Sentencing Commission has found the involvement of an undercover agent relevant, the Commission has discussed its impact directly. See, e.g., U.S.S.G. § 2A3.2, comment. (n.1) (discussing undercover agent's role in the portrayal of a "minor" in criminal sexual abuse); U.S.S.G. § 3B1.1, comment. (n.1) (clarifying that an

undercover agent is not a "participant" for purposes of determining an aggravated leadership role)." *United States v. Watkins*, 477 F.3d 1277, 1280 (11th Cir. 2007)

*United States v. Khawaja*, 118 F.3d 1454 (11th Cir. 1997), invoked by the Petitioner, can be easily distinguished from the case at hand because in *Khawaja* the court found that the defendants "had not taken crucial steps" to commit the substantive offense, the offense was not about to be completed at the time of interruption, and, therefore, the reduction under § 2X1.1(b)(2) should apply. Here, Petitioner had taken not only crucial steps to commit the offense, but effectively all steps he believed were necessary to carry out the offense.

This Court concludes that Counsel's failure to raise an objection or to instruct Petitioner on the applicability of the three-level reduction did not render counsel constitutionally ineffective. Counsel cannot be deemed ineffective for failing to raise a meritless issue. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992)

### b. Failure to address issue of role enhancement

Petitioner claims that counsel was ineffective for not addressing the issue of role enhancement which, according to Petitioner, is inconsistent with *United States v. Martinez*, 584 F.3d 1022, 1024 (11th Cir. 2009). However, Petitioner's retained counsel Mr. Iacullo sent a letter to the US Probation Office objecting to the role enhancement. This letter was subsequently filed by Petitioner's appointed counsel Ms. Golder (CR DE 97). Petitioner's Counsel, therefore, raised the objection correctly and their service cannot be considered constitutionally ineffective.

In addition *Martinez* is clearly distinguishable: the Eleventh Circuit found that Martinez was not the leader or organizer in the criminal activity and the role enhancement based on Section 3B1.1(a) (resulting in a 4 level enhancement) was not applicable. The Section 3B1.1(a) enhancement states a four-level enhancement for the "organizer or leader of a criminal activity

that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. 3B1.1(a). The Petitioner, however, received a two-level enhancement based on Section 3B1.1(c), which only requires the Petitioner to be an organizer, leader, <u>manager or supervisor.</u> The role of organizer or leader requires considerably more than a mere managing or supervisory role (see Application Note 4 to Section 3B1.1).

Government provided sufficient evidence to support Petitioner's role as manager of the kidnapping (see undercover agent's testimony, CV DE 8-9 at page 149). Petitioner had been planning this kidnapping for one and a half years and during the conversations with the undercover agent Petitioner led the conversations, made the decisions, e.g. regarding ransom demands, (CV DE 8-9 at pages 151, 154) and Petitioner was clearly the driving force behind the scheme. The role enhancement was, therefore, correctly applied. Again, Counsel cannot be deemed ineffective for failing to raise a meritless issue. *United States v. Winfield,* 960 F.2d 970, 974 (11th Cir. 1992)

### c. Failure to address indictment defects

In Section 3.b *supra* this Court has determined that Petitioner failed to show the required prejudice under the *Strickland* test with regard to Counsel's failure to address the alleged indictment defects.

### d. Failure to address hopelessness of duress defense

Petitioner claims that Counsel did not provide him with sufficient information on the hopelessness of the duress defense he was intending to raise. Petitioner then goes on to claim that he would never have gambled away his acceptance of responsibility reduction had he been told that a duress defense cannot stand if he exposed himself to it recklessly. (CV DE 11 at 10).

16

However, Petitioner fails to prove prejudice. The record clearly shows that Petitioner was adamant about moving forward with his duress defense, despite warnings not only from his Counsel, but repeatedly from the court during his plea hearing (CV 85-7 at Pages 12, 13, 22, 43, 53, 63).

Petitioner only presents self-serving *post hoc* assertions about how he would have proceeded, when the record clearly shows that Petitioner was not willing to accept advice let alone change his course of action accordingly. Petitioner has failed to prove prejudice under the *Strickland* test.

### e.  Failure to offer adequate guidance on the meaning and value of the plea

Petitioner alleges that his retained counsel failed to offer guidance on the meaning and value of the plea and the likelihood that waiving the right to appeal would create hardship after sentencing error. Petitioner does not further specify this alleged misconduct.

The District Court thoroughly explained to Petitioner (who has a law degree and practiced as a civil trial lawyer) the implications of the sentencing appeal waiver (CV DE 8-6 at page 32 through 34) and the consequences of waiving a trial (CV DE 8-6 at 12, 13). The Petitioner was, therefore, well informed of the consequences of his plea and this Court cannot derive from Petitioner's petition how the alleged failure resulted in any prejudice to the Petitioner.

For all alleged shortcomings of Petitioner's Counsel, Petitioner has failed to prove either the required prejudice or counsel's error which raises to unconstitutional ineffectiveness under the *Strickland* test.

### 6. Lack of access to evidence/law library and involuntary pro se election (Ground 5)

#### a.  Lack of Access

Petitioner claims that he had a right to access to evidence and a law library when he was proceeding *pro se* (CV DE 1 at page 22). In his support, Petitioner cites *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) stating that "The federal appellate courts have split on whether *Faretta* [    ] implies a right of the pro se defendant to have access to a law library." However, the Eleventh Circuit has answered this question in the negative: "We have held that a pro se criminal defendant has no constitutional right of access to a law library or legal materials where counsel has been offered. *See Edwards v. United States*, 795 F.2d 958, 961 nn. 1 & 3 (11th Cir.1986) (rejecting a collateral challenge to a criminal conviction based on the denial of library access while the petitioner proceeded pro se at trial, and concluding that '[w]hen counsel is offered, the alternative of a library is not mandatory')." *United States v. Denton*, 535 F. App'x 832, 835 (11th Cir. 2013).

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975).

Petitioner was aware of the impediments to his defense and despite district court's repeated warnings, Petitioner still decided to proceed *pro se*. Petitioner claims that 18 U.S.C. § 3412 granted him a right to be released from detention to prepare his defense. However, the statute only provides that the judicial officer "may" permit the temporary release to the extent it is necessary for preparation of defense. This gives the judicial officer the discretion to permit a temporary release, but does not grant a right to the Petitioner for such release.

With regard to Petitioner's inability to access the evidence, Petitioner fails to specify which evidence he was unable to access, however, this Court assumes from the records that Petitioner means the tapes of recorded conversations. Petitioner stated during the continued sentencing on May 28, 2013, that he had intended to use the tapes to show inconsistencies in the undercover agent's testimony. However, the government cleared up the incorrect statement made by the undercover agent itself and Petitioner himself then stated that the playing of the tapes was a "moot point" (CV DE 8-9 at page 6). Petitioner later conceded that since the District Court judge had listened to the relevant parts of the tapes, playing them was a moot point. (CV DE 8-9 at page 6).

Petitioner also fails to show how the possession of the evidence would have affected the outcome of his sentencing, thus failing to show prejudice.

### b. Involuntary *pro se* election

Petitioner claims that his decision to proceed *pro se* was involuntary because he was represented by counsel who had a conflict of interest. Petitioner claims that the Eleventh Circuit conceded that Petitioner's counsel was in fact conflicted, however, this Court does not derive anything of that sort from the appellate decision (CV DE 8-1). The Eleventh Circuit concludes the opposite: "But as discussed *supra*, Defendant did not have conflicted counsel." (CV De8-1 at page 33).

In addition, the issue was already raised and adjudicated in the appeal proceedings and Petitioner is, therefore, barred from raising them again without showing cause and prejudice under *Frady*. Petitioner seeks to establish cause by claiming appellate counsel was also ineffective. However, this court cannot detect constitutionally ineffective counsel by the appellate counsel (see Section 8 *infra*). Petitioner failed to show cause.

**7.  Ineffective Assistance of appellate counsel (Ground 6)**

Petitioner raises five reasons why appellate counsel was ineffective. With the exception of one (prejudice suffered from conflict of interest), these are the same reasons which were raised to show appointed counsel's and privately retained counsel's ineffectiveness and, therefore, this Court points to the relevant sections dealing with appointed and retained counsel's ineffectiveness in Sections 3, 4 and 6:

- Failure to challenge prejudice suffered from appointed counsel's conflict of interest: Like the Eleventh Circuit in its decision on Petitioner's appeal (CV DE 8-1 at page 26), this Court also cannot detect any conflict of interest of appointed counsel. Appellate counsel raised the issue of appointed counsel's alleged conflict of interest in the appeal and the Eleventh Circuit dealt with this issue, therefore, Petitioner is procedurally barred from raising this claim again (See *Kastenbaum v United States*, 588 F.2d 138, 139 (5th Cir. 1979)). Even if appointed counsel violated ethical rules when speaking about her disagreements with the client about the defense strategy, this had no effect on the Petitioner's defense. Petitioner himself openly discussed his strategy with the District Court and the Government (CV DE 8-8 at page 13, 28, 49). Failing to raise this meritless issue would not constitute constitutionally ineffective counsel. *Winfield,* 960 F.2d 970, 974

- Failure to challenge involuntary guilty plea: As set out in Section 4 *supra*, the guilty plea was made voluntary and knowingly and, thus, appellate counsel cannot be viewed as constitutionally ineffective for failing to raise this frivolous claim.

- Failure to challenge indictment: As laid out in Section 3.b. *supra* Petitioner failed to show prejudice with regard to the alleged defects in the indictment.

- Failure to challenge sentencing error (inchoate conspiracy reduction): As set out in Section 3.a. *supra* the District Court was correct in not applying the reduction and appellate counsel cannot be faulted for failing to raise a meritless issue.

- Failure to challenge issue of denial of access to evidence and legal materials: Section 6.a *supra* lays out that Petitioner was not entitled to such access and, thus, no fault can be detected in appellate court's failure to raise this issue.

In each case of alleged ineffectiveness by appellate counsel, Petitioner has failed to show cause and/or prejudice as required by *Strickland*.

## 8. No Evidentiary Hearing is Required

Section 2255 provides that an evidentiary hearing shall be granted after a habeas petition is filed "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The burden rests with the Petitioner to establish the need for an evidentiary hearing. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir. 1984).

"Bare allegations" in a petitioner's subsequent affidavit, which are "affirmatively contradicted" by the record, are insufficient to warrant an evidentiary hearing. *United States v. Carter*, 2007 WL 2774472, *8 (M.D. Ala. Sept. 24, 2007) (no evidentiary hearing was warranted where petitioner offered only "the mere allegation that he would not have pleaded guilty" but for his attorney's alleged misrepresentations regarding his sentence).

Petitioner contends that he is entitled to an evidentiary hearing (DE 1), but given the Court's finding that Petitioner has failed to allege facts necessary to establish claims for due process violations, this Court concludes that no hearing on Petitioner's claims is required.

### 9. Certificate of Appealability

No appeal from a denial of a section 2255 petition may be filed unless the court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Such certificate of appealability may be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner can make this showing by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Moss v. United States*, 2010 WL 4056032 (M.D. Fla. Oct. 15, 2010).

Here, Petitioner has not demonstrated that reasonable jurists could differ in the assessment of his claims. Accordingly, it is recommended that the Court not issue a certificate of appealability related to the instant Petition.

### CONCLUSION

In conclusion, this Court **RECOMMENDS** that the District Court **DENY** Michael James Melillo's Motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (DE 1) without issuing a certificate of appealability.

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Judge Beth Bloom, United States District Court Judge for the Southern

District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); *see also* Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy"). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

   **DONE and SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 12 day of March, 2018.

                                        JAMES M. HOPKINS
                                        UNITED STATES MAGISTRATE JUDGE


Copies to:
Hon. Beth Bloom
Counsel of record